May it please the court. Welcome to Saipan. My name is Eric O'Malley. I represent the United States. Thank you. I would like to reserve three minutes for rebuttal, please. We'll do our best. We didn't do very good the last time. All the time in the world. Go ahead. A jury in this courtroom heard the evidence, followed the judge's instructions, and decided that May Fang Weng was guilty of conspiring to transport illegal aliens and aiding and abetting the transportation of illegal aliens. Initially, the trial court agreed with that decision. But after a few weeks of reflection, it reversed course and decided that, in fact, the jury got it wrong. It overturned the verdict. It took it away from the jury. I am here today to ask this to reinstate that verdict. From the very beginning, from when the defendant was first interviewed, she tried to portray this situation as essentially no different than buying a ticket on a ferry to Guam. But that's not what happened. This was an organic enterprise that began when the defendant and eight other illegal aliens here on Laughley decided that it would be easier for them to prolong their stay in the United States by going to Guam because that's where the jobs were. It ended with a midnight helicopter rescue by the United States Navy and with the conviction of three locals who, prior to this, were just ordinary fishermen. As I said, the jury decided that Ms. Wang should share some of the responsibility for that conduct. But the trial court overturned that verdict. Now, when deciding to charge this case, as we do with all of our cases, we look first at the statutes and the elements of the crime. In this case, we first alleged conspiracy to transport illegal aliens. We asked ourselves, is there evidence that Ms. Wang knew? Asked whether there was an agreement between two or more people to transport illegal aliens. Yes, there was. So, counsel, specifically, what evidence was presented to the jury to support the conspiracy charge against Ms. Wang? Well, there's all of the stipulations that establish that Ms. Wang participated in all of the meetings, the initial meeting at the World Mission Church, as well as the meeting with the subgroup. Based on the phone records, it appeared that she organized that meeting with the subgroup. I'm sorry to interrupt, but as you go through this, paying for her own transport is not enough, correct? I would not necessarily agree with that, but I think what case tells me otherwise, because I thought that there is case law here that says when it's regarding your own participation, I mean, for your own transport, it's not enough. So, if you can point me to a case then. There are cases in other districts that have said that if all they're doing is paying for passage. Give me your best one for this point here, because as you go forward, I want to make sure we're trying to figure out what evidence was before the jury. So, I'm trying to supplement, I guess, the question that Judge Rawlinson just asked you, that supports the conspiracy that didn't involve the transportation of her own self. I think the case law, while a couple of other circuits have decided that if the situation is just a mere fee-paying passenger, I believe the Salinas case in the Eighth Circuit came to that conclusion. There is currently no similar case in the Ninth Circuit, whereas the prevailing law, the overwhelming authority says that if a person's participation is more than fee-paying passenger, then responsibility can't attach. That's the question I had, is what is the evidence that this defendant was more than just a fee-paying passenger? Well, let's begin with the video. The fact that she was shopping for a boat that was about the same size as the boat that was eventually used, that was found on her phone at the beginning of... A boat that was never used, though. A boat that was never used, but jurors could rationally infer that based on their knowledge and experience that she is an alien living unlawfully in Saipan. She's probably not shopping for a boat so that she can start a parasailing business. But was that evidence that she was shopping for a boat for someone other than herself to be transported? Jurors could rationally infer that, particularly when measured against all of the evidence, the other evidence that was introduced, which would include the fact that she appeared, she was present at the initial meeting. She made phone calls that jurors could rationally infer was to arrange the meeting in the car with the subgroup where money was paid to Ms. Hutaitono. The fact that she was in the back seat... Her presence at the other meetings, isn't that... I'm just trying to figure out... That could just be furthering her own transportation. Where's the evidence that she bought in, I guess, and conspired in such a way that she is doing it to support someone other than herself? That's where I think sounds like the questions are really being pointed to for you to respond to. I don't think that that's necessary. The law of conspiracy doesn't require any evidence that someone enters a conspiracy with the intent of trying to help other people. The law of conspiracy, as soon as you join a criminal enterprise, the individual purpose becomes the common purpose. That's what we had in this case. I wanted to just go back and clarify one thing, because as I understand it, the district court instructed the jury that to find the defendant liable of transporting an undocumented immigrant, the transported immigrant has to be somebody other than the defendant. Right? That is how the court instructed the jury. And did you challenge that instruction? We did not, because that was not... So it seems to me that's the baseline here, is that you can't be held liable for transporting yourself. So now, you're trying to... What I understand you're trying to do is say, but there's evidence here of a conspiracy that would involve others, correct? Yes, Your Honor. And so let's go back to that evidence. We talked about the boat, the meeting in the car, everybody paid their, quote, deposit, and then that was called off and the money was given back, correct? Correct. So what impact does that have on the alleged conspiracy? I don't see that it has any impact, because they rejoined the conspiracy. At some point, they decided that, in fact, they would go, and she ended up paying the $2,500 that went to buy the boat. And when the time came, she got on the boat, got on the boat just before dusk and traveled at night. All of that, I think, speaks to the pretty indisputable fact that this was a clandestine effort to evade detection. So A-10, someone is trying to transport themselves, but they join a group, and they're aware of a group. Do you think that's sufficient for them to be a co-conspirator? I think that if there's evidence that shows that that person did more than just pay a fee, on a ferry ride. What did she do more than pay the fee? I mean, the attending meetings, I'm not sure that gets you there, but okay, I heard you on that. And then the paying the money and then getting it back, I'm not sure that gets you there. What else do you have besides that? She met with Ms. Hutaitono in the back of the car. She handled the money. She handled the money on behalf of everyone? Is that your position? Yes, she handled, but she was the comptroller, if you will. She handled the money. She turned it over. She videoed Hutaitono counting the money as a form of... That's the video in the car, right? Yes, Hutaitono says, I now have money for each of you. So is it clear that she's doing that on behalf of everybody, or she's just holding the money that everybody's contributed? The law of conspiracy and the law of aiding and abetting doesn't require much involvement at all. Any minor contribution counts. And in this case, her contributions, her arranging that meeting, her shopping for the boat at the beginning. Arranging the meeting. What was the proof that she arranged the meeting? The telephone calls. And while we didn't have the text of those calls, but rational jurors can infer that because the only calls that were made that day were between Hutaitono and Wang, and that was the day of the meeting, that they could rationally infer that it was Wang that arranged that meeting. And move ahead, she was the one that was sitting in the back of the car, handling the money and recording the transaction. I think also something, the aiding and abetting theory really got very superficial treatment in both the order and the defense, the appellee's response. And that's unfortunate because I think that was actually the stronger theory. And I feel it bears noting that the instructions that were cited by the court's order were different than the instructions that were given at trial. In the court's order, she, the court- You're talking about the Rule 29 order? Yes, Your Honor. They cite the instructions that were given by a case, a Ninth Circuit case, USVC. Those elements required both the specific intent for the defendant to want to facilitate the primary, but also the required intent of committing the underlying crime. The jury, however, was instructed with the Ninth Circuit model jury instructions that requires the intent to facilitate the crime. The decision overturning the verdict was based on the lack of Ms. Wang's intent to further the crime. And this is significant because lack of evidence that Ms. Wang wanted to further the unlawful presence of others. But this is significant because the model rules contemplate a situation where it's whether or not Ms. Wang wanted to further the unlawful presence of other aliens. What matters is whether Ms. Hutaitono or Mr. Sablan wanted to further the unlawful presence of illegal aliens and whether or not Ms. Wang knew that that's what Hutaitono or Mr. Sablan wanted to do. Clearly she did. She participated in all the meetings. She got on the boat. She knew that all of these other aliens were going. She knew that Hutaitono's purpose was getting all of them to Guam so that they could further their unlawful presence. And so based on that, the theory of aiding and abetting should have been upheld. Do you have a best case for you that has someone similar to Ms. Wang's situation here, level of participation is sufficient? Can you give us your best case? Sure. King Ping Zhang. It was not a conviction based from this court and a decision that was approved by the Ninth Circuit. That theory was... It was in the Ninth Circuit you said? Yes. And it was a 371 case, client conspiracy, which conspiracy to obstruct the government function. Very similar fact pattern, if not identical for all intents and purposes. And the court upheld the theory that a group of aliens can conspire in this fashion to obstruct the government function. And even though that was a slightly different statute, it may not be a twin statute, but it's certainly a sibling to this statute. The essence, the core essence is that it is obstructive conduct that can... The government will acknowledge that the Congress probably did not intend to criminalize someone who overstays a visa. But if they collaborate to break the law and further their unlawful presence, then there's no reason why just because they are an unlawful alien, that they should be immune from being prosecuted for that crime. I don't see that in your briefs, but maybe you can just provide the court with the citation afterwards. Certainly, Your Honor. Certainly, Your Honor. Did you want to reserve your minute? Yes, thank you. Thank you. Good morning, Your Honors. Good morning. I'm Richard Miller. I'm here on behalf of defendant, and in this case, unusually, a Pelley, Mayfan Wang. And may it please the court. When the district court granted Ms. Wang's motion for judgment of acquittal, it reached the right result and for the right reasons. With respect to both conspiracy and aiding and abetting, it found the evidence insufficient to prove beyond a reasonable doubt that Ms. Wang intended to further the illegal transport of aliens. With respect to conspiracy alone, it also found the evidence insufficient to prove that she had agreed to smuggle other undocumented aliens. And the reason the court didn't go farther into the specific intent to facilitate element for aiding and abetting, because the court had already found that she didn't intend to further the illegal transport. So it didn't need to go to specific intent. And that's perfectly reasonable and correct. The district court did not require the government to disprove alternative innocent inferences from such evidence as the boat video and the life jacket photo. It merely observed that such inferences were reasonable, while the inference of guilt, which the government urged the jury to make, was not reasonable. So counsel, you heard us go through with opposing counsel the evidence that the government asserts supports the conviction. So for instance, with the video, your client was there in the car and the government says that she collected money on behalf of everyone and presented it. Do you agree with that assertion? No, I don't, your honor. Why not? Because there was no evidence that she collected the money. Did she pay the money that she gave? Was it more than for her own personal transport? There was no evidence that she gave that money. What do you mean there's no evidence? There was no evidence that it was transferred from her to the other. There's evidence that she's holding that she's holding the money up and taking a picture of it in order to show, okay, $500. So she's documenting, look, we gave $500 to Miss Titano. But then the government says, taking inferences in favor of the government, given where we are, that in fact, she's holding money for everybody, for five people, $500, right? Yes, she is. And that's the video. And then we have a little transcript. Now that we have the video that basically said that Titano was saying, I now have the money for all of you, right? Yes. Yeah. Okay. I mean, why she took the video, I don't know. Yeah, there was some questions about how to translate. But we do have the video. And so isn't that the best evidence that she was doing more than acting for herself? I don't know that I would call it the best evidence, but I would address that, certainly address that evidence. Not insignificant. I understand. If the court thinks that that's best evidence, I'm happy to address it. Because we have to look at this, as you know, in the light most favorable to the government and whether a reasonable juror could draw that inference. Yes. So tell us why not with the money shot? Because even if the jury can reasonably infer that she gathered the money and handed it over, that does not show that she had an intent to further the transport of the other illegal aliens. Why else do you have the money? I mean, in other words, she's got the money. You're saying it doesn't show that she intended to do anything vis-a-vis the other individuals. But if you take that coupled with her multiple phone calls and her attendance at the meetings, why isn't that sufficient to sustain the verdict? It doesn't show that she is, to use the vernacular, in cahoots with the smugglers, with Ms. Titano and Pastor Lee and the boat people. It shows that she is taking some sort of a leadership role within the subgroup. That's kind of damning, isn't it? No, Your Honor, it's not damning as far as whether she was in a conspiracy with the people who were doing the illegal transporting. So, for example, let's say a meeting is held, a meeting is called, we're going to go to meet Ms. Titano, and one of the people in the subgroup says, I don't have a way to get there. You have a car, can we get a ride with you? Sure, come on, I'll give you a ride. Is that, is she now, because she's helped the other people who are paying for passage in some way, is she now, has she now broken through the threshold between the smuggled and the smugglers, and now is joining the smugglers just because she gave a ride to one of them? She might not be, but what we have here is something more than that, don't we? There's multiple phone calls that day, right? But we did not have any transcript of those. We don't know what was said in the phone calls. We don't know whether the phone calls were before or after the meeting, which is important to know. So, and this goes, Your Honors, to the stacking of inferences problem, that an inference, there may be circumstantial evidence that could support the fact, could support the government's position, but you need to have, to show other things in order to reach that, in order for that inference that the government is suggesting to be reasonable. So, did the government show all these phone calls were before the meeting, or most of the phone calls were before the meeting, so she's trying to set up the meeting? No, the government did not show that. Does the government have a transcript of anything that was said between them? No, we don't have that. So, my position is that the inference that the government wants to draw is not, in fact, a reasonable inference. It is just speculation. You said a moment ago that the video was not the best evidence. In your view, what is the best evidence? For the government? Yes, you said the video was not the best evidence. So, what is the best evidence in your view? Yeah, I said, I think I said that, that I don't know that I would agree that it was the best evidence. I don't think any of the evidence is particularly good. I really don't. I'm happy to go through each of them. No, I was just curious because you said that's not the best evidence. When one of my colleagues said that's the best evidence, you said you wouldn't agree that that's the best evidence. So, the inference to me is that you think there's some better evidence, and I wanted to know what that was. I don't think any of the evidence on its own is great evidence, and what ends up happening is, so you have several pieces of evidence. You have the video, you have the meeting video, you have the boat video, you have the the jacket photo, you have the phone calls. Let me just say, I think that that jacket photo is next to worthless in terms of any culpability of your client as far as these charges. All right, so you have various pieces, but each of them only supports a reason. None of them on their own support a reasonable inference. Counsel, we don't look at the evidence on its own. We look at all of the evidence that was presented to the jury. Taking that evidence in the light most favorable to the government, then we have to determine whether or not there is sufficient evidence to support the friend across the aisle for his best case on behalf of the government. I'd like your best case for finding that the circumstances here, is there anything comparable you can show us, precedential, that was insufficient evidence to convict your client? I don't think that there is, Your Honor, because it's so unusual for the government to try to convict someone of conspiracy, innating, abetting as they did in this case. You just can't find cases. The best cases are actually the buyer-seller drug cases. So, for example, the case that the district court cited, I don't know, I can get to it quickly, but the district court cited one of the buyer-seller cases added out of the Ninth Circuit. We've never had a buyer-seller drug case that applied in this context, have we? Well, the buyer-seller drug cases are, yes, you actually have had those cases. I know we have buyer-seller drug cases. We have a lot of those, but my question, if you'll just wait one minute. Yeah, I'm so sorry, I have a bad habit of interrupting. The question I have is the application of that principle in an immigration conspiracy context. Do we have anything like that in our circuit or another circuit that we would look to as comparable? I don't think we do have one. There are principles in the buyer-seller cases that would apply here and I think do apply. The point being that if buying from a distributor is enough to show that you're conspiring with the distributor to distribute drugs, then every drug purchase is now a conspiracy to distribute. That becomes the thing here. If every time somebody buys a ticket onto a boat to go to Guam and there are other illegal aliens as well, then in fact, every time an illegal alien tries to move within the United States, if we follow that rule in the CNMI, if an undocumented alien is living in Coblerville on the south end of the island and hears that there's a job, someone wants to hire him up in Tanopag, but he has no way to get there. Tanopag is in the north end of the island. He gets someone to take him there and that other person knows that the person he's transporting is illegal, then there we have it. We have the conspiracy. You can get him for conspiracy. It doesn't have to be going across the wall. The jury had the situation here with Wang, right? Who is an individual who was acquitted. With Wang's wife. I'm just saying that we're somewhere between those because she, of course, in effect, had a ticket to come to Guam and the jury heard the evidence vis-a-vis her and they didn't find her liable or guilty of any of these other charges, so she was acquitted, but the other two were convicted. So there is some evidence here that the jury was listening to the different cases, the different circumstances, right? Yes, I would agree with that and the jury did not have evidence of videos on Wang's phone or there have been phone calls between Wang and also it had the evidence that her husband, in fact, had paid for her. So one can understand the jury's verdict in that way. The government's counsel cited the Ping Ping case. Are you familiar with that? I am familiar with the Ping Ping case. Can you tell me why we should distinguish that from this? No, I can't offhand, Your Honor, say why you should and the argument that the government was making, I do not believe was made in the briefs. I didn't have a chance to respond to that either. I would have to think that out and if the government is going to submit something, I would also ask the court permission to submit something in response. I wanted to address, unless the court has other questions, the boat video briefly because it's a good example of unreasonable inferences from something that looks dramatic when you show it. The boat video was, it was modified on June 22nd, so it was taken no sooner than June 22nd. The evidence was that Ms. Hu told someone in the group that she needed to buy a boat no earlier than June 28th. So the other evidence does not support a reasonable inference that the boat video has anything to do with trying to help Ms. Hu or others in the conspiracy buy the boat. And that's an example of why we need to avoid conjecture and look at each of these pieces of evidence and see is there any point where she is, where my client is looking to help Ms. Hu and there's none in the evidence. Thank you, Your Honors. Thank you. This was a team effort and when you join a team, the individual purpose becomes the common purpose. I want to return to a point that Your Honor made about the split verdict. I think that establishes that this was a very conscientious jury that weighed the evidence and followed the instructions as they were given. And they, their decision should be entitled to deference. When the court reviewed the evidence, the first time I read the order, it read as if someone, a juror, was weighing everything and with the mind of a lawyer poking holes in various propositions. And after several weeks deciding that in the court's opinion, there was reasonable doubt. That of course is not the standard that we're looking at. The standard that we're looking at is could any rational juror have found sufficient evidence? In this case, the defense counsel talks about stacking of inferences. I would contend that it wasn't a stacking of inferences, it was a evidence alone. Perhaps not, but when combined together, they were sufficient to sustain the verdict. Thank you, Your Honors. Thank you very much, Mr. O'Malley, Mr. Miller. We appreciate the oral argument presentations here today. The case of United States of America v. Wang is now submitted.
judges: MURGUIA, McKEOWN, RAWLINSON